[No. S050870. June 1, 1998.]

TIMOTHY TOLAND, Plaintiff and Appellant, v.
SUNLAND HOUSING GROUP, INC., Defendant and Respondent.

**COUNSEL**

Hefner, Stark & Marois, Robert P. Biegler and Stephen S. Talt for Plaintiff and Appellant.

Stanley J. Bell, Ian Herzog, Douglas Devries, Leonard Sacks, Bruce Broillet, Harvey Levine, Ronald Wrinkle, William D. Turley, Steven Kleifield, David A. Rosen, Tony Tanke, Mary E. Alexander, David Casey, Robert B. Steinberg, Stoplman, Krissman, Elber, Mandel & Katzman, Dennis M. Elber, Thomas G. Stolpman, Rose, Klein & Marias, David A. Rosen, The Arns Law Firm, Robert S. Arns and Morgan C. Smith as Amici Curae on behalf of Plaintiff and Appellant.

Shepard & Haven, Kenneth B. Shepard and Karen E. Halbo for Defendant and Respondent.

William M. McMillan, George Cory, Kenneth G. Nellis, Sedgwick, Detert, Moran & Arnold, Frederick D. Baker, Kirk C. Jenkins, Schaffer & Lax, Clifford L. Schaffer, Horvitz & Levy, David M. Axelrad, Stephen E. Norris, John Gueli, Thelen, Marrin, Johnson & Bridges, Philip R. Placier, Jennifer Kuenster, Kevin O'Brien, Crosby, Heafey, Roach & May, Ezra Hendon and Kathy M. Banke as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**KENNARD, J.**—Under the doctrine of peculiar risk, a person who hires an independent contractor to do inherently dangerous work can be held liable for tort damages when the contractor causes injury to others by negligently performing the work. The doctrine serves to ensure that innocent bystanders or neighboring landowners injured by the hired contractor's negligence will have a source of compensation even if the contractor turns out to be insolvent. As we explained in *Privette* v. *Superior Court* (1993) 5 Cal.4th 689, 694 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*), courts created the peculiar risk doctrine in the belief that "as between two parties innocent of any personal wrongdoing—the person who contracted for the work and the hapless victim of the contractor's negligence—the risk of loss occasioned by the contracted work was more fairly allocated to the person for whose benefit the job was undertaken."

In *Privette, supra,* 5 Cal.4th 689, we unanimously held that under the peculiar risk doctrine the hiring person's liability does not extend to the hired contractor's employees. Because the Workers' Compensation Act (Lab. Code, § 3200 et seq.) shields an independent contractor from tort liability to its employees, applying the peculiar risk doctrine to the independent contractor's employees would illogically and unfairly subject the hiring person, who did nothing to create the risk that caused the injury, to greater liability than that faced by the independent contractor whose negligence caused the employee's injury. (5 Cal.4th at pp. 698-700.) As we concluded: "[T]he property owner should not have to pay for injuries caused by the contractor's negligent performance of the work when workers' compensation statutes already cover those injuries." (*Id.* at p. 699.)

The doctrine of peculiar risk, as relevant here, is described in two sections of the Restatement Second of Torts, section 413 and section 416. Under section 413, a person who hires an independent contractor to do inherently dangerous work, but who fails to provide in the contract or in some other manner that special precautions be taken to avert the peculiar risks of that work, can be liable if the contractor's negligent performance of the work

causes injury to others. Under section 416, even if the hiring person has provided for special precautions "in the contract or otherwise," the hiring person can nevertheless be liable if the contractor fails "to exercise reasonable care to take such precautions" and the contractor's performance of the work causes injury to others. There has been some disagreement in the trial courts and the Courts of Appeal whether *Privette, supra*, 5 Cal.4th 689, bars recovery only in actions brought under section 416, or also under the theory of peculiar risk described in section 413. Here, a subcontractor's employee sued the general contractor for on-the-job injuries, asserting that *Privette* did not bar recovery under section 413. The Court of Appeal disagreed, holding that *Privette* barred recovery under section 413 as well as section 416. We affirm the decision of the Court of Appeal.

I

In December 1992, Timothy Toland was working for framing subcontractor CLP Construction, Inc. (CLP) at a housing development under construction. While helping other CLP employees in raising a large and heavy framed wall, Toland was injured when the wall fell on him. The project's owner and general contractor was Sunland Housing Group, Inc. (Sunland).

Toland sought recovery from his employer, CLP, under the Workers' Compensation Act. He also sued Sunland, alleging that raising the wall created a peculiar risk of injury for which Sunland should have required subcontractor CLP to take special precautions.

Sunland moved for summary judgment in the trial court, asserting that Toland's action was barred under this court's then recent decision in *Privette, supra*, 5 Cal.4th 689. In opposing the motion, Toland argued that *Privette* had eliminated peculiar risk liability for employees of independent contractors only in actions based on section 416 of the Restatement Second of Torts (hiring person liable for contractor's negligence in spite of providing that the contractor take special precautions), but that *Privette* had no effect on an action such as his, which was brought under section 413 (hiring person who fails to provide for special precautions liable for contractor's negligence).

The trial court entered summary judgment for Sunland. The Court of Appeal affirmed.

II

We begin with a brief overview of the doctrine of peculiar risk and the treatment of that doctrine in sections 413 and 416 of the Restatement Second

of Torts. We then discuss our decision in *Privette, supra,* 5 Cal.4th 689, as well as the Court of Appeal cases that have considered whether *Privette* bars recovery only under section 416 or also under section 413.

## A. *The Doctrine of Peculiar Risk*

■ Under the doctrine of peculiar risk, one injured by inherently dangerous work performed by a hired contractor can seek tort damages from the person who hired the contractor. (*Privette, supra,* 5 Cal.4th at p. 693.) The doctrine provides an exception to the common law rule that an individual who hires an independent contractor generally is not liable for injuries to others caused by the contractor's negligence in performing the hired work. (*Ibid.*) The courts created this exception in the late 19th century to ensure that innocent third parties injured by inherently dangerous work performed by an independent contractor for the benefit of the hiring person could sue not only the contractor, but also the hiring person, so that in the event of the contractor's insolvency, the injured person would still have a source of recovery. (*Id.* at pp. 693-694.)

■ In determining the applicability of the doctrine of peculiar risk, a critical inquiry "is whether the work for which the contractor was hired involves a risk that is 'peculiar to the work to be done,' arising either from the nature or the location of the work and ' "against which a *reasonable person* would recognize the necessity of taking special precautions." ' (*Aceves* v. *Regal Pale Brewing Co.,* [(1979)] 24 Cal.3d 502, 509 [156 Cal.Rptr. 41, 595 P.2d 619], quoting *Griesel* v. *Dart Industries, Inc.* [(1979)] 23 Cal.3d 578, 586 [153 Cal.Rptr. 213, 591 P.2d 503]; Rest.2d Torts, § 413, com. b; *id.,* § 416, com. b.)" (*Privette, supra,* 5 Cal.4th at p. 695, italics added.)

A peculiar risk need not be one that would inevitably arise in the course of the work. " 'It is sufficient that it is a risk which the employer should recognize as likely to arise in the course of the ordinary and usual method of the work, or the particular method which the employer knows that the contractor will adopt.' " (*Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 586 [153 Cal.Rptr. 213, 591 P.2d 503], quoting Rest.2d Torts, § 416, com. e, p. 397; see also *Mackey* v. *Campbell Construction Co.* (1980) 101 Cal.App.3d 774, 785-786 [162 Cal.Rptr. 64] ["Where the employer should recognize that a risk is likely to arise as a result of a method of work which the employer knows that the contractor will adopt, this is clearly a peculiar risk within the rule. [Citation.] A peculiar risk may arise out of a contemplated and unsafe method of work adopted by the independent contractor."].)

■ Even when the work presents a special or peculiar risk of harm, the person who hired the contractor will not be liable for injury to others if the

injury results from the contractor's "collateral" or "casual" negligence. (*Aceves* v. *Regal Pale Brewing, Co.* (1979) 24 Cal.3d 502, 510 [156 Cal.Rptr. 41, 595 P.2d 619]; Prosser & Keeton on Torts (5th ed. 1984) § 71, pp. 515-516; Rest.2d Torts, § 426.) Negligence is collateral when it involves an "operative detail of the work, as distinguished from the general plan or method to be followed." (*Aceves* v. *Regal Pale Brewing Co., supra,* at p. 510.) But, as we have recognized, "it is often difficult to distinguish those risks that are inherent in the work from those that are collateral, and the line to be drawn between the two types of risks is 'shadowy.' (*Van Arsdale* v. *Hollinger* [(1968)] 68 Cal.2d 245, 252 [66 Cal.Rptr. 20, 437 P.2d 508], quoting Harper, Law of Torts (1933) § 292.)" (*Privette, supra,* 5 Cal.4th at p. 696.)

## B. *The Restatement Second of Torts*

In the Restatement Second of Torts, sections 413 and 416, both of which set forth a theory of peculiar risk liability, appear in chapter 15. The chapter is entitled "Liability of an Employer of an Independent Contractor." Its first section states the general rule that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." (Rest.2d Torts, § 409, p. 370.) Sections 413 and 416 describe exceptions to this general rule of nonliability, as we discuss below.

### 1. *Section 413*

Section 413 of the Restatement Second of Torts is part of chapter 15's topic 1, entitled "Harm Caused by Fault of Employers of Independent Contractors." Section 413 bears the heading, "Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor." It reads: "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer [¶] (a) fails to provide in the contract that the contractor shall take such precautions, or [¶] (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions." (Rest.2d Torts, § 413.) Because section 413 rests the liability of the hiring person on his or her omission to provide for special precautions in the contract or in some other manner, it is sometimes described as a rule of "direct liability." (See *Aceves* v. *Regal Pale Brewing Co., supra,* 24 Cal.3d 502, 509; *Griesel* v. *Dart Industries, Inc., supra,* 23 Cal.3d 578, 585-586; see also *Kelleher* v. *Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 62 [129 Cal.Rptr. 32].)

## 2. Section 416

Section 416 of the Restatement Second of Torts appears in chapter 15's topic 2, "Harm Caused by Negligence of a Carefully Selected Independent Contractor." Section 416 is entitled, "Work Dangerous in Absence of Special Precautions." It provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." (Rest.2d Torts, § 416.) As the introductory note to this section explains, "the [hiring person] is under a duty which he is not free to delegate to the contractor." (Rest.2d Torts, ch. 15, topic 2, Introductory Note, p. 394; see also *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 255 [66 Cal.Rptr. 20, 437 P.2d 508] [describing section 416 as imposing a "nondelegable duty to exercise due care"].)

Because the hiring person's liability under section 416 of the Restatement Second of Torts flows from the independent contractor's negligent failure to take special precautions in performing the inherently dangerous work, as required by "the contract or otherwise," the hiring person's liability is often referred ·to as "vicarious liability." (See *Kelleher* v. *Empresa Hondurena de Vapores, S.A.*, *supra*, 57 Cal.App.3d at p. 62; *Anderson* v. *Chancellor Western Oil Dev. Corp.* (1975) 53 Cal.App.3d 235, 240 [125 Cal.Rptr. 640].)[1]

## C. *Our Decision in Privette v. Superior Court*

As noted at the outset, in *Privette*, *supra*, 5 Cal.4th 689, we held that the doctrine of peculiar risk, which serves to ensure a source of tort recovery for innocent bystanders or neighboring landowners injured during the course of inherently dangerous work performed by an independent contractor, should not apply to the contractor's own employees. *Privette* expressly overruled *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407, 410-411 [20

---

[1] A third theory of "peculiar risk" liability is set forth in section 427 of the Restatement Second of Torts. Entitled, "Negligence as to Danger Inherent in the Work," it provides: "One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger." (*Ibid.*) Here, plaintiff Toland, who relies on section 413, does not suggest that liability under section 427 is exempt from our holding in *Privette,* no doubt because a comment in the Restatement describes section 427 as "closely related to, and to a considerable extent a duplication of" the rule stated in section 416. (Rest.2d Torts, § 427, com. a., p. 416.)

Cal.Rptr. 12, 369 P.2d 708], to the extent it held that an employee of an independent contractor could recover under the peculiar risk doctrine against the person who hired the contractor. (*Privette, supra,* 5 Cal.4th at p. 702, fn. 4.) *Privette*'s holding is consistent with the law in most of the jurisdictions that have considered the issue. (*Id.* at pp. 698-699, citing cases.)

*Privette* pointed out that the policy reasons that support imposition of peculiar risk liability on the hiring person for injuries to neighboring property owners or innocent bystanders are absent when the person injured by the independent contractor's negligence is an employee of the contractor. (*Privette, supra,* 5 Cal.4th at p. 701.) The neighboring landowner or innocent bystander may have no other source of compensation for injuries resulting from the contractor's negligence in doing the inherently dangerous work. In contrast, an employee of the negligent contractor can, for workplace injury caused by the contractor's negligence, recover under the workers' compensation system regardless of the solvency of the contractor. (See Lab. Code, § 3716 [providing workers' compensation benefits to workers employed by uninsured employers].) As we explained in *Privette,* when an independent contractor's employee is injured on the jobsite, workers' compensation achieves the same objectives as tort damages awarded under the peculiar risk doctrine: a dependable source of compensation for workplace injury; spreading the risk of harm of dangerous work to those who contract for and thus benefit from the work, by including the cost of workers' compensation insurance in the price paid for the contracted work; and promoting safety in the workplace. (5 Cal.4th at p. 701.)

*Privette* also noted that when the injured person is an employee of the independent contractor, a policy justification for imposing peculiar risk liability on the hiring person—namely the hiring person's right to equitable indemnity from the independent contractor—is also absent. (*Privette, supra,* 5 Cal.4th at p. 701.) We explained: "When a property owner or general contractor who hires an independent contractor for work presenting a peculiar risk of harm to others is held liable under the doctrine of peculiar risk for injuries to an innocent bystander or an owner of neighboring land, the property owner or general contractor can, for the damages paid the injured party, obtain equitable indemnity from the independent contractor responsible for the injuries. This ensures that the ultimate responsibility for the harm caused by the peculiar risk of the work done is borne by the individual or entity at fault for the injury. But when the person injured is an employee of the independent contractor, the exclusivity provisions of the workers' compensation scheme shield the negligent contractor from an action seeking equitable indemnity. ([Lab. Code,] § 3864.)" (*Ibid.*)

We also observed in *Privette* that although the doctrine of peculiar risk is sometimes described as "a nondelegable duty" rule, it is in effect a form of

vicarious liability. (*Privette, supra,* 5 Cal.4th at p. 695.) In a footnote, which briefly mentioned sections 413 and 416 of the Restatement Second of Torts, we said: "The conclusion that peculiar risk is a form of vicarious liability is unaffected by the characterization of the doctrine as 'direct' liability in situations when the person hiring an independent contractor 'fails to provide in the contract that the contractor shall take [special] precautions.' (Rest.2d Torts, § 413; see *Aceves* v. *Regal Pale Brewing Co., supra,* 24 Cal.3d at p. 509; *Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 585-586 [153 Cal.Rptr. 213, 591 P.2d 503].) Irrespective of whether a contract of hire provides that special precautions be taken, a person who employs an independent contractor to perform dangerous work is subject to liability under the doctrine of peculiar risk. (Rest.2d Torts, § 416.) Thus, peculiar risk liability is normally premised on the broader rule of vicarious liability for the contractor's negligence. (See [Note, *Liability to Employees of Independent Contractors Engaged in Inherently Dangerous Work: A Workable Workers' Compensation Proposal*] [(1980)] 48 Fordham L.Rev. 1165, 1171; *Bower* v. *Peate* [(1876)] 1 Q.B.D. [321,] 326 [the contractor's default is attributable to the person who authorized the work].)" (*Privette, supra,* 5 Cal.4th at p. 695, fn. 2.) These remarks have, as discussed below, sparked some debate in the Courts of Appeal regarding the scope of our holding in *Privette*: whether it applies only to section 416 or also to section 413 of the Restatement Second of Torts.

### D.  *Post-Privette Decisions by the Courts of Appeal*

We filed our decision in *Privette, supra,* 5 Cal.4th 689, on July 19, 1993. In April 1994, the Court of Appeal decided *Owens* v. *Giannetta-Heinrich Construction Co.* (1994) 23 Cal.App.4th 1662 [29 Cal.Rptr.2d 11]. In that case, a subcontractor's employee was injured while working as a drywall installer on a construction project. The employee sued the project's general contractor under the doctrine of peculiar risk. A jury returned a verdict in favor of the subcontractor's employee. The Court of Appeal reversed, agreeing with the general contractor that *Privette* barred recovery by the subcontractor's employee.

In its decision, the Court of Appeal in *Owens* made these general observations about the doctrine of peculiar risk: "[P]eculiar risk is not exclusively a form of vicarious liability. It may arise as a form of direct liability if the person who hires an independent contractor '(a) fails to provide in the contract that the contractor shall take such precautions, or [¶] (b) fails to exercise reasonable care to provide in some other manner for the taking of

such precautions.' (Rest.2d Torts, § 413; see *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 508-509 [156 Cal.Rptr. 41, 595 P.2d 619]; *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407, 410 [20 Cal.Rptr. 12, 369 P.2d 708]; *Addison* v. *Susanville Lumber, Inc.* (1975) 47 Cal.App.3d 394, 398-399 [120 Cal.Rptr. 737]; *Stilson* v. *Moulton-Niguel Water Dist.* (1971) 21 Cal.App.3d 928, 938 [98 Cal.Rptr. 914].) Peculiar risk liability is vicarious when injury is caused 'by the failure of the contractor to exercise reasonable care to take [special] precautions, even though the employer has provided for such precautions in the contract or otherwise.' (Rest.2d Torts, § 416; see *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 254 [66 Cal.Rptr. 20, 437 P.2d 508].)" (*Owens* v. *Giannetta-Heinrich Construction Co., supra,* 23 Cal.App.4th at pp. 1667-1668, fn. omitted.)

The Court of Appeal in *Owens* added: "It is plain from the discussion in *Privette* that the Supreme Court intended its holding to apply only in those situations where third party liability is vicarious rather than direct." (*Owens* v. *Giannetta-Heinrich Construction Co., supra,* 23 Cal.App.4th at p. 1668.) The Court of Appeal gave no explanation for that conclusion. It may have provided a clue to its reasoning, however, in quoting *Privette*'s footnote 2 in its entirety but italicizing the word "normally" in the last sentence, as follows: " '[P]eculiar risk liability is *normally* premised on the broader rule of vicarious liability for the contractor's negligence.' " (*Owens, supra,* at p. 1667, fn. 4; see also *Yanez* v. *U.S.* (9th Cir. 1995) 63 F.3d 870, 873 [describing *Owens* as stating "a narrow exception· to *Privette*" for cases brought on the "direct liability" theory of Restatement Second of Torts section 413].)

In this case, the Court of Appeal concluded that *Owens* v. *Giannetta-Heinrich Construction Co., supra,* 23 Cal.App.4th 1662, was wrong in interpreting our decision in *Privette, supra,* 5 Cal.4th 689, as applying only to the theory of peculiar risk described in section 416 of the Restatement Second of Torts: "Both the express language of *Privette* and a complete reconciliation of the peculiar risk doctrine with the workers' compensation system preclude a landowner's liability for injuries to the employee of a contractor hired by the landowner resulting from work involving a peculiar risk, whether the liability is characterized as direct or vicarious." The Court of Appeal in this case reasoned that *Privette* made no distinction between section 413 liability and section 416 liability, noting that *Privette* expressly overruled *Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d 407, a case that involved only section 413 liability.

Because of these conflicting views by the Courts of Appeal, we granted review to clarify the scope of our holding in *Privette, supra*, 5 Cal.4th 689.[2]

## III

■ Plaintiff Toland asserts that *Privette, supra*, 5 Cal.4th 689, bars recovery by an employee of an independent contractor only in cases based on section 416 of the Restatement Second of Torts, which, Toland observes, holds the hiring person vicariously liable for the independent contractor's failure to take the special precautions provided for "in the contract or otherwise." Thus, Toland contends, *Privette* has no bearing on cases such as his that are premised on the theory of section 413 of the Restatement, which holds the hiring person directly liable for failing to provide in the contract or in some other manner for the taking of special precautions. Toland's argument rests on the distinction some courts and commentators have drawn between these two sections, characterizing the liability under section 413 as "direct" liability, while describing the liability under section 416 as "vicarious" liability. As we explain, this distinction is misleading, for liability under these sections is neither purely direct nor purely vicarious.

Under section 413 of the Restatement Second of Torts, a person who hires a contractor to do inherently dangerous work but fails to provide "in the contract" or "in some other manner" for the taking of special precautions can be held liable when the contractor's negligence causes injuries to others. Section 416 of the Restatement pertains to a hiring person who, unlike the hiring person in section 413, has provided for special precautions, but section 416 nevertheless holds the hiring person liable when the contractor's failure to take such precautions causes harm to others. Thus, under either section 413 or section 416, the hiring person is subject to liability for injuries to others resulting from the contractor's failure to take safety precautions while performing the inherently dangerous work.

Both sections 413 and 416 of the Restatement Second of Torts are exceptions to the general rule of nonliability that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." (Rest.2d Torts, § 409.) Both impose on one who hires an independent contractor to do inherently

---

[2]Our grant of review did not extend to, and therefore we do not decide, a second issue raised by Toland: whether *Privette, supra*, 5 Cal.4th 689, would preclude an employee of an independent contractor from seeking tort recovery for workplace injuries under the theory of section 414 of the Restatement Second of Torts that the general contractor or landowner "retained control" over the operative details of the hired work. As the Court of Appeal unanimously concluded, the facts Toland offered in opposing summary judgment were insufficient to raise a triable issue on that question.

dangerous work a duty to ensure that the contractor take special precautions to prevent harm to others. (See *Bower* v. *Peate* (1876) 1 Q.B.D. 321, 326 ["[A] man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbour must be expected to arise . . . cannot relieve himself of his responsibility by employing some one else . . . ."].) Thus, under both sections 413 and 416, the hiring person's liability is cast in the form of the hiring person's breach of a duty to see to it that special precautions are taken to prevent injuries to others; in that sense, the liability is "direct." Yet, peculiar risk liability is not a traditional theory of direct liability for the risks created by one's own conduct: Liability under both sections is in essence "vicarious" or "derivative" in the sense that it derives from the "act or omission" of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work. We made this point in *Privette, supra,* 5 Cal.4th at page 695, in footnote 2: "The conclusion that peculiar risk is a form of vicarious liability is unaffected by the characterization of the doctrine as 'direct' liability in situations when the person hiring an independent contractor 'fails to provide in the contract that the contractor shall take [special] precautions.' "[3]

As amicus curiae California State Department of Transportation notes, liability under both sections 413 and 416 of the Restatement Second of Torts "arises from the absence of special precautions which the contractor performing the work is required to take without regard to the requirements of the contract." It points out that the confusion stems from the Restatement's placement of the two sections: Section 413 appears in the "direct liability" provisions discussed in topic 1 of chapter 15, while section 416 appears under topic 2 of chapter 15, which deals with "vicarious liability." This placement would imply theories of liability that are mutually exclusive. But the theory of liability expressed in section 413 (hiring person who fails to provide for special precautions liable for contractor's negligence) is *not* mutually exclusive of section 416's theory of liability (hiring person liable for contractor's negligence in spite of providing that the contractor take special precautions). Rather, the two forms of liability overlap. As explained

---

[3]By concocting a duty in a particular situation to prevent another from acting negligently, as an exception to the general rule that "one owes no duty to control the conduct of another" (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894]), it is always possible to impose liability on one person for the negligence of another and to label that liability "direct." The concurring and dissenting opinion does precisely this when it insists on characterizing Restatement Second of Torts section 413's theory of liability (which, as explained in the text, is essentially vicarious or derivative) as "direct" and refuses to acknowledge any distinction between this artificial "direct liability" and the liability imposed on the hiring person for injuries resulting from the hiring person's own conduct, such as, for example, concealing a hidden danger (see fn. 4, *post*) or insisting on use of an unsafe method to execute the work.

in *Kelleher* v. *Empresa Hondurena de Vapores, S.A., supra,* 57 Cal.App.3d 52, 62: "Where there is a special risk of physical harm, the 'employer' is liable to third persons injured as a proximate result of the independent contractor's negligence *whether or not there is an agreement* requiring the independent contractor to take special precautions." (Italics added.) No doubt it is for this reason that one commentator has characterized sections 413 and 416 as "redundant statements" of the peculiar risk doctrine, faulting the Restatement for not articulating "a single statement of the doctrine." (Comment, *Clarifying the Peculiar Risk Doctrine: The Rule Restated* (1988) 20 Pacific L.J. 197, 205-206.) As observed in *Monk* v. *Virgin Islands Water & Power Authority* (3d Cir. 1995) 53 F.3d 1381, 1394, footnote 36, most courts have "explicitly refused" to distinguish cases brought under section 416 from those brought under section 413 "just because [section 416 appears] under the vicarious liability part of Chapter 15 and [section 413] is under the direct liability heading." (See also *Dillard* v. *Strecker* (1994) 255 Kan. 704 [877 P.2d 371, 378] [noting the "confusion" furthered by the courts in describing section 413's form of liability as "direct" and section 416's as "vicarious," when the theories "obviously overlap in some cases and appear to be used interchangeably in others" and the underlying policy provisions apply "uniformly to both"].)

Plaintiff Toland seizes on a comment in *Privette, supra,* 5 Cal.4th 689, that when an employee of an independent contractor suffers on-the-job injuries, and thus can seek recovery under the Workers' Compensation Act, imposing liability for those same injuries on the person who hired the contractor would produce "the *anomalous* result that a *nonnegligent* person's liability for an injury is greater than that of the person whose negligence actually caused the injury." (5 Cal.4th at p. 698, italics added.) According to Toland, such an anomaly does not exist in an action such as his that relies on Restatement Second of Torts section 413, which imposes liability based on the hiring person's failure to provide in the contract or in some other manner that the contractor take special precautions in performing the inherently dangerous work. Plaintiff misunderstands what we said in *Privette.*

*Privette* relied in part on the reasoning expressed in a tentative draft to the Restatement Second of Torts that workplace injuries are covered by workers' compensation insurance, "the cost of which is 'included by the contractor in his contract price' and 'ultimately . . . borne by the defendant who hires him.'" (*Privette, supra,* 5 Cal.4th at p. 699, quoting Rest.2d Torts (Tent. Draft No. 7, Apr. 16, 1962) ch. 15, special note, pp. 17-18.) The tentative draft also stated that "when the Sections in this Chapter speak of liability to 'another,' or 'others,' or to 'third persons,' it is to be understood that *the employees of the contractor,* as well as those of the defendant

himself, are *not* included." (Rest.2d Torts (Tent. Draft No. 7, Apr. 16, 1962) ch. 15, special note, p. 18, italics added.)

Therefore, under *Privette, supra,* 5 Cal.4th 689, even though a person hiring an independent contractor to do inherently dangerous work can be liable under the peculiar risk doctrine for failing to see to it that a hired contractor take special precautions to protect neighboring property owners or innocent bystanders, such a person has *no* obligation to specify the precautions an independent hired contractor should take for the safety of *the contractor's employees*. Absent an obligation, there can be no liability in tort. (See Prosser & Keeton on Torts, *supra,* § 30, pp. 164-165 [A cause of action for "negligence" requires each of the following: (1) a duty, or obligation, recognized by law; (2) a breach of the duty; (3) legal cause; and (4) actual loss or damage.]; *United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770] [same]; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60 [same].)

Thus, contrary to plaintiff Toland's assertion, our decision in *Privette, supra,* 5 Cal.4th 689, bars employees of a hired contractor who are injured by the contractor's negligence from seeking recovery against the hiring person, *irrespective* of whether recovery is sought under the theory of peculiar risk set forth in section 416 or section 413 of the Restatement Second of Torts. In either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage. Our view is shared by an overwhelming majority of courts that have considered the issue. (See *Kane* v. *J.R. Simplot Co.* (10th Cir. 1995) 60 F.3d 688, 692-693 [interpreting Idaho law]; *Monk* v. *Virgin Islands Water & Power Authority, supra,* 53 F.3d 1381, 1390-1393 [following our decision in *Privette* in interpreting Virgin Islands law]; *Anderson* v. *Marathon Petroleum Co.* (7th Cir. 1986) 801 F.2d 936, 940-942 (opn. by Posner, J.) [declining to distinguish between so-called "direct" and "vicarious" liability theories in applying Illinois law]; *Hess* v. *Upper Mississippi Towing Corp.* (5th Cir. 1977) 559 F.2d 1030, 1033-1035 [holding in a maritime case that a hired contractor's employees cannot recover against the hiring person under section 413]; *Dillard* v. *Strecker, supra,* 255 Kan. 704, 725-727 [877 P.2d 371, 385] [declining to distinguish between sections 416 and 413 in holding no peculiar risk liability to employees of independent contractors]; *Matteuzzi* v. *Columbus Partnership, L.P.* (Mo. 1993) 866 S.W.2d 128, 131-132 [holding in the case of an employee of an independent contractor "the same reasons . . . for rejecting a claim under § 416 are equally persuasive . . . under § 413"]; *Fagundes* v. *State* (1989) 116 Idaho 173, 177 [774 P.2d 343, 347] [no liability to independent contractor's

employee under either section 416 or section 413]; *Stockwell* v. *Parker Drilling Co., Inc.* (Wyo. 1987) 733 P.2d 1029, 1031-1032 [same].)

Against this considerable weight of authority, the concurring and dissenting opinion proposes that employees of an independent contractor should be exempt from *Privette*'s nonliability rule in cases in which the hiring person has "superior knowledge . . . of a special risk or the precautions . . . to avoid it. . . ." (Conc. and dis. opn., *post*, at p. 277.) This suggestion, couched in the familiar language of fault-based liability, has superficial appeal, but it does not hold up under scrutiny.

Even a cursory review of the cases in which employees of independent contractors have sought tort recovery under the doctrine of "peculiar risk" reveals that they arise overwhelmingly from injuries sustained in the building trades and typically involve claims brought against a general contractor by the employees of a subcontractor. It is a common practice in the construction industry for general contractors to hire subcontractors to do particular jobs. (See generally, Comment, *The Peculiar Risk Doctrine: High Rise Benefits for California Construction Workers* (1986) 19 Loyola L.A. L.Rev. 1495.) It would be a rare case indeed in which a general contractor was entirely ignorant of the methods used and requirements of the work being performed by subcontractors. Thus, although at first blush the concurring and dissenting opinion's proposed rule appears limited in scope, its practical effect would be to eviscerate our holding here that employees of an independent contractor, because of the availability of workers' compensation benefits, cannot seek recovery under section 413 of the Restatement Second of Torts.

Moreover, the proposed rule is impractical. The term "superior knowledge" has superficial appeal when considered in the abstract, but its practical application presents considerable difficulties. How is a trier of fact to determine whether to impose liability based on the relative knowledge of two parties, each of whom is "knowledgeable" in some form or degree? Must the general contractor's knowledge be "superior" with regard to industry practices or must it be "superior" with regard to the actual instrumentality of the injury? Does a general contractor with 25 years of experience in the construction industry possess greater or lesser knowledge than a subcontractor with 5 years of experience in a particular building trade? There is little basis on which a jury could sensibly impose liability using the concurring and dissenting opinion's "comparative knowledge" rule.

Contrary to what the concurring and dissenting opinion implies, claims based on a general contractor's "superior knowledge" will not be amenable

to summary judgment, because the question of who possesses the "superior knowledge," the subcontractor or the general contractor, will almost always present a triable issue of material fact. Summary judgment practice imposes on a moving defendant the burden of proving that a necessary element of the plaintiff's case cannot be established. (Code Civ. Proc., § 437c; *Addy* v. *Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214 [51 Cal.Rptr.2d 642].) Under the rule proposed by the concurring and dissenting opinion, a general contractor could prevail on summary judgment only by presenting uncontroverted evidence that its own knowledge was demonstrably less than that of the subcontractor hired to do the particular work. Because in most cases the subcontractor and the general contractor will both have considerable knowledge, this will be a virtually impossible task. Sunland's successful summary judgment motion in this case in no way suggests that the question of "superior knowledge" was or could have been resolved on summary judgment. Here, contrary to the concurring and dissenting opinion's conclusion that "the record in this case shows the general contractor here was not better positioned than the framing subcontractor" (conc. and dis. opn., *post*, at p. 271), the question of who, as between the general and subcontractor, had "superior knowledge" was never litigated as part of Sunland's summary judgment motion. Rather, Sunland sought summary judgment, and the trial court granted it, on the ground that Toland, as the employee of an independent contractor, cannot recover against the hiring person under the doctrine of peculiar risk.

In the end, the concurring and dissenting opinion would effectively deprive general contractors of a right available to any other hiring person: the right to delegate to independent contractors the responsibility of ensuring the safety of their own workers. On peril of incurring civil liability, general contractors would, under the concurring and dissenting opinion's approach, have to specify in their contracts with subcontractors every conceivable safety or precautionary measure to be taken during construction. Even then, a general contractor could still incur tort liability if the employee of a subcontractor suffers an injury because the employee could, in a lawsuit against the general contractor, claim that the safety measures set forth in the contract were just not specific enough in averting the injury. In effect, the concurring and dissenting opinion's proposed rule would impose liability on general contractors simply for "having written a certain kind of contract, a contract found too vague on one point." (*Nelson* v. *United States* (9th Cir. 1980) 639 F.2d 469, 477.)[4]

Ultimately, our conclusion here that employees of independent contractors cannot recover under either section 416 or section 413 of the Restatement

---

[4]Our decision in no way precludes employees of independent contractors from seeking recovery from a general contractor or other hiring person for personal injury resulting from a failure to disclose a concealed preexisting danger at the site of the hired work that was known

Second of Torts is premised on policy: whether the peculiar risk liability of a general contractor, a landowner, or any other hirer of an independent contractor should, consistent with its common law origins, be limited to protecting third parties such as innocent bystanders or neighboring landowners against the possible insolvency of the hired contractor at fault, or whether such liability should extend to the independent contractor's employees as well. As we concluded in *Privette, supra*, 5 Cal.4th 689, it is illogical and unfair that a landowner or other person who hires an independent contractor should have greater liability for the independent contractor's negligence towards the contractor's employees than the independent contractor whose liability is limited to providing workers' compensation coverage. Imposing on the hiring person a liability greater than that incurred by the independent contractor (the party with the greatest and most direct fault) is equally unfair and illogical whether the hiring person's liability is premised on the theory of section 413 (hiring person who fails to provide for special precautions liable for contractor's negligence) or the theory of section 416 (hiring person liable for contractor's negligence in spite of providing that the contractor take special precautions).

Accordingly, the Court of Appeal in this case correctly held that our decision in *Privette, supra*, 5 Cal.4th 689, necessarily bars an employee of an independent contractor from relying on the doctrine of peculiar risk to seek recovery under either section 413 or section 416 of the Restatement Second of Torts.[5]

## Disposition

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

**WERDEGAR, J.,** Concurring and Dissenting.—I concur in the majority's result, but respectfully disagree with much of its rationale. I write separately to set forth my view of the applicable law.

---

to the hiring person. Recovery in such a case would be for fraudulent concealment or misrepresentation, however, and would not involve the "comparative knowledge" analysis proposed by the concurring and dissenting opinion, nor would it depend on the peculiar risk doctrine.

[5]To the extent that *Owens* v. *Giannetta-Heinrich Construction Co., supra*, 23 Cal.App.4th 1662, concludes to the contrary, it is disapproved.

Our task is to delineate the duty, if any, the hirer[1] of an independent contractor owes to protect the contractor's employees against inherent risks of the work for which the contractor was hired. Plaintiff contends the duty extends to all peculiar risks of the work, and the hirer is therefore responsible, under the theory embodied in section 413 of the Restatement Second of Torts,[2] for any injury to an employee resulting from the hirer's failure to require that the contractor take special precautions against a peculiar risk. Defendant contends, and the majority of this court holds, that the hirer bears no duty to protect a contractor's employees against special risks of the work; the majority deems any application of section 413's theory to an employee plaintiff inconsistent with the holding and reasoning of *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*).

I would adopt a third view: The hirer does owe the contractor's employees a duty to ensure the taking of measures essential to avoid special risks of the work, but that duty extends only to those risks and precautions as to which the hirer's knowledge or control is superior to that of the contractor. An independent contractor, in my view, should be solely responsible for his or her own negligence in failing to protect workers against those dangers that are within the actual or constructive knowledge and control of the contractor. The hirer, having engaged a presumably competent independent contractor to perform the work, is normally not obliged to oversee the job's performance or set out all the safety measures the contractor should take. In this I agree with the majority. But, when conditions within the special knowledge or control of the hirer create a danger inherent and peculiar to the work, there is no justification in statute, policy or precedent to immunize the hirer from tort liability for his or her own failure to require reasonable precautions be taken against the danger. Tort liability for injuries to the contractor's employees should, therefore, be recognized only when the hirer "was in a better position than the contractor either to anticipate dangers to workmen, to foresee and evaluate the best methods of protection, or to implement and enforce compliance with appropriate on-site safety precautions." (*Nelson v. United States* (9th Cir. 1980) 639 F.2d 469, 478 (*Nelson*).)

Because the record in this case shows the general contractor here was not better positioned than the framing subcontractor to know of, evaluate or protect against the risks of raising the wall unit, I concur in the affirmance of summary judgment for the defendant general contractor.

---

[1] As noted in *Grahn v. Tosco Corp.* (1997) 58 Cal.App.4th 1373, 1379 [68 Cal.Rptr.2d 806], footnote 1, the person employing the independent contractor may be referred to as the "employer," "principal," "hirer" or, depending on the circumstances of the case, as the "owner," "developer" or "general contractor." In this opinion, I adopt the *Grahn* court's usage of "hirer" to designate, in general, the person hiring the contractor.

[2] Unless otherwise noted, all further section references are to the Restatement Second of Torts.

I

As a general rule, the hirer of an independent contractor is not liable in tort for injuries caused by the contractor's work. The common law, however, recognizes numerous sets of circumstances that lie outside that rule, including two, both adopted in California, that involve the "special" or "peculiar" risks created by inherently dangerous work. Section 413 embodies the theory of peculiar risk liability plaintiff relies upon here: The hirer is responsible for injuries caused by the failure of the contractor to take needed precautions against a special risk if the hirer is or should be aware of the risk and "(a) fails to provide in the contract that the contractor shall take such precautions, or [¶] (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions." Section 416 also involves peculiar risks, but is much broader: It subjects the hirer to liability *whether or not* the hirer has provided in the contract, or by other means, that the contractor should take the needed precautions against a special risk of the work.[3]

Section 413 recognizes a theory of personal negligence not resting on vicarious responsibility for the torts of another. "In the first place, quite apart from any question of vicarious responsibility, the employer may be liable for any negligence of his own in connection with the work to be done. Where there is a foreseeable risk of harm to others unless precautions are taken, it is his duty to exercise reasonable care to . . . provide, in the contract or otherwise, for such precautions as reasonably appear to be called for." (Prosser & Keeton on Torts (5th ed. 1984) § 71, p. 510, fns. omitted.) In this fundamental respect, which the majority opinion largely ignores, the theory of liability recognized in section 413 differs from that of section 416.

Official notes to the Restatement, and cases from this and other courts adopting the Restatement theories of liability, make amply clear that section 413 liability rests directly on the personal negligence of the hiring party itself, while section 416 liability is vicarious in nature. In a note introducing the various bases of a hirer's liability for the acts of a contractor, the Restatement authors explain that the liability described in sections 410 to

---

[3]A peculiar or special risk is one "peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done." (§ 413, com. b, p. 385.) Section 413 does not hold the hirer liable merely for failing to prevent the contractor from doing the work negligently. (*Ibid.*; see *Hughes* v. *Atlantic Pacific Construction Co.* (1987) 194 Cal.App.3d 987, 1000 [240 Cal.Rptr. 200] [peculiar risk doctrine "does not apply to injuries resulting from the independent contractor's negligence for failing to take precautions as to the work's operative details"].) Although we did not grant review to decide whether the injury here arose from a peculiar risk or from the contractor's collateral negligence, the facts of this case (see *post*, pt. III) suggest the injury arose from the contractor's simple negligence in the detailed performance of the work, rather than from the hirer's failure to protect against an inherent peculiar risk.

415 has its principal application when, as stated in section 409, the hirer is *not responsible for the contractor's negligence*: "In such a case, the [hirer's] liability must be based upon *his own personal negligence* in failing . . . [e.g.,] to exercise reasonable care to provide for the taking of such precautions, either by the contractor whom he employs or otherwise, as in advance are recognizable as necessary to enable the work to be safely done (see § 413) . . . ." (Rest.2d Torts, ch. 15, topic 1, introductory note, p. 371, italics added.) On the other hand, the liability rules stated in sections 416 to 429, "*unlike those stated in the preceding §§ 410-415, do not rest upon any personal negligence of the employer. They are rules of vicarious liability*, making the employer liable for negligence of the independent contractor, irrespective of whether the employer has himself been at fault." (Rest.2d Torts, ch. 15, topic 2, introductory note, p. 394, italics added.)

In *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 509 [156 Cal.Rptr. 41, 595 P.2d 619] and *Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 585-586 [153 Cal.Rptr. 213, 591 P.2d 503] (both overruled on other grounds in *Privette, supra,* 5 Cal.4th 689), we reiterated earlier cases' adoption of sections 413 and 416 and explained the two sections differed in that section 413 imposes "direct liability" on the hirer for failing to ensure that needed precautions were taken. As the court in *Stilson* v. *Moulton-Niguel Water Dist.* (1971) 21 Cal.App.3d 928, 938 [98 Cal.Rptr. 914] succinctly explained, "Section 413 makes the employer of the independent contractor directly liable for his own negligence, while section 416 imposes a vicarious liability for the negligence of the independent contractor." (Accord, *Addison* v. *Susanville Lumber, Inc.* (1975) 47 Cal.App.3d 394, 399 [120 Cal.Rptr. 737]; *Owens* v. *Giannetta-Heinrich Construction Co.* (1994) 23 Cal.App.4th 1662, 1667 [29 Cal.Rptr.2d 11]; *United States* v. *DeCamp* (9th Cir. 1973) 478 F.2d 1188, 1193, fn. 3 [Section 413 "imposes direct liability upon the employer of an independent contractor if the employer himself fails to take appropriate special precautions. This section thus contrasts sharply with Section 416, which imposes vicarious liability on the employer for the negligence of the independent contractor."].) Thus, "[s]ection 413 . . . is a theory of *personal* rather than vicarious liability. Liability is imposed for the failure of the employer itself to adequately provide for precautions against danger. . . . Restatement [section] 413 does not require the employer to protect the worker against the independent contractor's negligence; nor does it impose vicarious liability under some idea of 'non-delegable' duty. It merely requires an employer to act in a reasonable manner in providing for precautions to be taken in work that involves a peculiar risk." (*Moloso* v. *State* (Alaska 1982) 644 P.2d 205, 215 [29 A.L.R.4th 1165], fn. omitted.)

Recognizing that section 413 liability rests on personal negligence rather than vicarious responsibility does not, however, fully solve ·the problem

before us; we must still decide the scope of the hirer's duty. Under what circumstances, if any, will an omission on the hirer's part be deemed negligent, making the hirer potentially liable to a contractor's injured employee?

The federal court of appeals considered this question at length in *Nelson, supra,* 639 F.2d 469, in an analysis I find persuasive. An employee of a contractor hired by the United States Coast Guard to repair a wave barrier in San Francisco Bay was drowned while working atop the barrier. The employee's widow sued the federal government, alleging the Coast Guard negligently failed to specify adequate safety precautions for the inherently dangerous work to be done on the barrier. The court, applying and developing the federal common law of maritime injuries, analyzed the plaintiff's claim against the United States under the section 413 theory of liability. (*Nelson, supra,* at p. 474.)

The appellate court, finding precedent divided on the application of section 413 to contractors' employees, returned to first principles. "The independent contractor exception to the doctrine of respondeat superior rests on the general tort principle that in different circumstances different parties to the employment relation will know best how to avoid an accident and to weigh the costs and benefits of various precautions as against the costs and probability of the accident to be avoided." (*Nelson, supra,* 639 F.2d at p. 475.) In most circumstances, the contractor, rather than the hirer, will be the best accident avoider, since an independent contractor, by definition, is generally responsible for planning and executing the details of contractual performance. "In some cases, however, the job the owner contracts out is 'likely to create . . . a peculiar unreasonable risk of physical harm.' Restatement (Second) of Torts § 413 (1965). In these cases there is a special reason to place initial responsibility on the [hirer] if he is 'more likely to consider the risk' and better able to assess ways to mitigate the risk. Calabresi, *Optimal Deterrence and Accidents,* 84 Yale L.J. 656 (1975)." (*Nelson, supra,* at p. 476.)

The *Nelson* court therefore concluded that application of the section 413 theory to contractors' employees should depend "on the relation between the owner[-hirer] and the contractor." (*Nelson, supra,* 639 F.2d at p. 476.) In the case before it, the court held section 413 liability should *not* be imposed because there was no evidence "that the Government was in a better position than the contractor either to anticipate dangers to workmen, to foresee and evaluate the best methods of protection, or to implement and enforce compliance with appropriate on-site safety precautions." (639 F.2d at p. 478.) The *Nelson* approach was followed in *Peone* v. *Regulus Stud Mills, Inc.*

(1987) 113 Idaho 374 [744 P.2d 102], which held a lumber mill was not liable on either peculiar risk theory (section 413 or 416) for injuries caused by a falling snag (dead tree) to an employee of the logging company the sawmill had hired to cut and deliver certain timber. "The logging contractor is in a better position . . . to assess this risk [of a falling snag]. The logging contractor, when removing timber[,] will almost always be faced with problems of dead and diseased trees which create a danger to anyone working in the area. . . . A sawmill operator, simply by having timber rights on someone else's land, does not have special knowledge about the risks of falling snags on that land." (744 P.2d at p. 107; see also *Sierra Pacific Power Co.* v. *Rinehart* (1983) 99 Nev. 557 [665 P.2d 270, 274] [applying *Nelson* rationale: contractor hired to build cooling tower had special skills and experience in such construction and was better able to take special precautions against risks; hirer therefore not liable to contractor's worker who fell from tower during construction]; *Tauscher* v. *Puget Sound Power & Light Co.* (1981) 96 Wn.2d 274 [635 P.2d 426, 429] [holding peculiar risk liability ordinarily does not extend to contractors' employees, but recognizing a possible exception "when the owner or general contractor knows of inherent hazards of the work, and is in a position to protect against them."].)

In my view, the *Nelson* approach properly allocates liability for injuries suffered by employees of an independent contractor. In most circumstances, the hirer will have discharged his or her duty of care by selecting a competent contractor, leaving to that contractor the task of assessing and taking precautions against the dangers to its workers. "As long as an independent contractor is informed about particular safety risks, and is competent and solvent, there is no reason in law or policy why he alone should not be fully responsible for injuries to workmen arising out of the performance of inherently dangerous jobs in which the contractor has special skill and experience not shared with the owner." (*Nelson, supra,* 639 F.2d at p. 478.) But in the less common case, where it is the hirer who possesses special knowledge of the risks or the better opportunity to assess and require implementation of the necessary safety measures, section 413 properly recognizes the hirer's duty to take reasonable measures for the workers' protection.

The majority's holding that section 413 is completely inapplicable to injuries to a contractor's employees rests on the false premise that in section 413 cases the contractor is necessarily negligent and the hirer nonnegligent. To the contrary, section 413 liability involves the hirer's breach of its own duty of due care and does not depend on negligence on the part of the contractor. In some cases the hirer may have far superior knowledge or

notice of the risks than the contractor and be better able to take or order the necessary precautions. On a construction project, for example, the hirer, whether landowner, general contractor or both, may have reason to know of special risks, arising, e.g., from a condition of the property, unusual characteristics of the construction design or the work of other subcontractors, risks a particular subcontractor could not be expected to consider or take measures against. The contractor (or subcontractor) in such a case would not be negligent in failing to take precautions, but, under the section 413 theory, liability would nonetheless lie against the hirer premised on the hirer's *own negligence*.

*Moloso* v. *State, supra,* 644 P.2d 205 provides a good illustration. In *Moloso*, the Alaska Department of Transportation commissioned a geotechnical study for a planned highway project. The study found the rock face that was to be excavated had characteristics making it especially prone to sliding if certain precautions (rock bolting, top-down excavation and loose rock removal) were not taken. The study's author recommended that such precautions be included in the bid specifications, a stability inspector be retained for the project, and a prebid conference be held with all potential bidders to discuss the necessary precautions. (*Id.* at p. 209.) The state did not hold a prebid meeting, did not retain a full-time stability inspector, did not include all the recommended precautions in the specifications, and ultimately accepted the chosen general contractor's " 'value engineering proposal' " for an alternative (outside of specifications) plan requiring a steeper cut and bottom-up excavation. (*Id.* at pp. 209-210.) The plaintiffs' decedents, equipment operators for the excavation subcontractor, were killed by a rock slide in the course of the excavation work. (*Id.* at p. 210.)

To say, in the *Moloso* circumstances, that the excavation subcontractor was "primarily responsible" (maj. opn., *ante,* at p. 267) because it actually performed the work, and the state's responsibility was therefore "vicarious" or "derivative" (*id.* at p. 265), would distort the circumstances of the case. The special danger of the work in *Moloso* was inherent in the project as contracted, not the result of any carelessness in the excavation subcontractor's performance. Whether the subcontractor even knew or had notice of the special danger inherent in the plan proposed by the general contractor and approved by the department of transportation is unclear. But whether or not the subcontractor could be considered negligent in undertaking the work without additional precautions, the department's approval of a project plan that ignored special risks of which the department was actually aware and its failure then to direct that other precautions be taken, was, if unjustified by the cost savings or otherwise, personal negligence on the department's part, not "derivative" of any fault the subcontractor might have borne. Moreover,

as the entity responsible for selecting the overall plan of work and being in the best position to assess the dangers of the alternative plans, the department was the entity best able to avoid accidents by making the risks known and specifying the safety measures to be taken. In such circumstances, as the *Moloso* court held, the hirer is liable for employee injuries under the theory of personal negligence embodied in section 413. (*Moloso* v. *State, supra,* 644 P.2d at pp. 214-216.)

## II

For the reasons given above, I would hold that a hirer with superior knowledge or control of a special risk or the precautions necessary to avoid it owes the contractor's employees a duty to take reasonable steps to protect them against the risk, as recognized in section 413. Neither the exclusivity provisions of the workers' compensation law, nor the holding or rationale of *Privette, supra,* 5 Cal.4th 689, supports further limiting this duty of care.

Workers' compensation is, of course, the exclusive remedy of the independent contractor's employee against the contractor, assuming the contractor has properly secured payment of compensation. (Lab. Code, §§ 3600, 3602, 3706.) "On the other hand, the employee may sue any other responsible person for 'all damages proximately resulting' from the injury. (*Id.,* § 3852.)" (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 598 [7 Cal.Rptr.2d 238, 828 P.2d 140].) Under the California workers' compensation law, hiring an independent contractor does not generally make the hirer an employer of the contractor's employees for workers' compensation purposes. (*Blew* v. *Horner* (1986) 187 Cal.App.3d 1380, 1387 [232 Cal.Rptr. 660].) California law differs in this respect from that of most other states, in which the workers' compensation law deems the employees of a subcontractor to be employees of the general contractor for purposes of employer immunity from civil suit and, if the subcontractor is uninsured, the payment of compensation. (6 Larson, Workers' Compensation Law (1997) § 72.31, pp. 14-197 to 14-232.) Whatever the merits of such "statutory employer" provisions as a matter of legislative policy, it is not the role of this court to institute any such sweeping expansion of a statutory scheme.

It *is* the province of this court to determine, in the absence of applicable statute, the circumstances under which one person must bear vicarious liability in tort for another person's negligent acts and omissions. In *Privette, supra,* 5 Cal.4th 689, we declined, for good reason, to impose such vicarious liability on the hirer of an independent contractor for the negligence of the contractor with respect to a peculiar risk of the work. Neither our holding in

that case, however, nor the sound reasons supporting it, provides sufficient grounds to carve out, as the majority proposes to do in this case, a judicially created exception to the general rule of responsibility for *one's own* negligence.

In *Privette*, a schoolteacher who owned a rental duplex hired a roofing company to replace the building's roof. The plaintiff, one of the company's workers, was injured when, at the foreman's direction, he tried to carry buckets of hot tar up a ladder to the roof. Privette, the building owner, was not present at the time, and, as far as the opinion reveals, there was no evidence he had any roofing experience or any reason to appreciate any special risks of the work for which he hired the roofing company. We held the plaintiff could not hold Privette liable under the "peculiar risk doctrine." (*Privette, supra,* 5 Cal.4th at pp. 692-693.)

In our introduction, we referred to the peculiar risk doctrine as imposing "liability without fault" on the hirer. (*Privette, supra,* 5 Cal.4th at p. 691.) We stated without qualification that peculiar risk liability is "a form of vicarious liability" (*id.* at p. 695) and explained that imposing such liability on the hirer for injuries to the contractor's employee would be anomalous because the "nonnegligent" hirer would bear civil liability for an accident, while the contractor, "whose negligence actually caused the injury," would bear only the lesser burden of workers' compensation. (*Id.* at p. 698.) Moreover, we explained, the hirer is barred by workers' compensation exclusivity from obtaining equitable indemnity from the contractor. Thus, applying the peculiar risk doctrine would place a heavy burden on "someone who is 'fault-free.' " (*Id.* at p. 701.) In conclusion, we declined to allow the injured employee to "seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." (*Id.* at p. 702.)

A consistent theme thus runs through our discussion in *Privette*: The employee of an independent contractor should not be allowed to sue the hirer on a theory of vicarious liability for the contractor's negligent acts or omissions. Since the facts of *Privette* presented only the vicarious liability theory (the opinion reflects no evidence Privette was personally negligent), we had no occasion in *Privette* to discuss or decide the hirer's liability to employees of the contractor for the hirer's own negligent acts or omissions. As a Court of Appeal panel recently concluded after a careful reading of the opinion, *Privette*'s reach "is limited to instances where the injured employee seeks to hold the hirer answerable in tort damages for the fault of the independent contractor." (*Grahn* v. *Tosco Corp., supra,* 58 Cal.App.4th at p. 1388; see also *Owens* v. *Giannetta-Heinrich Construction Co., supra,* 23 Cal.App.4th at p. 1668 ["It is plain from the discussion in *Privette* that the

Supreme Court intended its holding to apply only in those situations where third party liability is vicarious rather than direct."].)

Also important to our decision in *Privette* was the conclusion that the policies furthered by the peculiar risk doctrine were equally well served by the workers' compensation system, making unnecessary the imposition of additional, vicarious liability on the hirer. The same cannot be said when liability is premised, under section 413, on the hirer's negligent failure to take measures against a risk within his or her unique or superior knowledge or control. Although, as we observed in *Privette*, the contractor's cost of securing compensation is likely to be passed through to the hirer in the contract price (*Privette, supra,* 5 Cal.4th at p. 699), that price does *not* reflect the costs of injuries inflicted by the hirer's own failure to exercise reasonable care. In the case of personal negligence on the hirer's part, therefore, workers' compensation liability will not adequately serve the cost-internalization and accident-prevention functions of tort law, as *Privette* argued it would do in the case of vicarious liability. (*Id.* at p. 701.) A general contractor who is relieved of tort liability for his or her own negligence in selecting, directing and supervising subcontractors will have less incentive to do so carefully, and the price of the general contractor's services will not reflect the true social cost of production.

Finally, we relied in *Privette* on considerations of fairness as between the hirer and the independent contractor. Having already paid the cost of compensation in the contract price, we observed, the hirer should not also have to bear civil damages for an accident "caused by the contractor's negligent performance," especially since the contractor itself enjoys civil immunity. (*Privette, supra,* 5 Cal.4th at p. 699.) But the same reasoning does not apply, of course, when the additional damages are caused by the hirer's own negligent failure to protect against a danger specially known to the hirer or within his or her particular realm of control. ". . . *Privette*'s concern about the fundamental unfairness of imposing vicarious liability on a nonnegligent hirer is entirely inapplicable where the hirer's own negligent conduct has caused or contributed to the worker's injury." (*Grahn* v. *Tosco, supra,* 58 Cal.App.4th at pp. 1384-1385.)

Nor does the hirer's inability to obtain equitable indemnity from the independent contractor (Lab. Code, § 3864) create fundamental unfairness in the case of damages resulting from the hirer's own negligence, as it would where the hirer's liability is solely vicarious. (See *Privette, supra,* 5 Cal.4th at pp. 698, 701.) To the extent the fault is the hirer's, no equitable indemnity should or would be available, whether the injury were to an employee or to a member of the public. Indeed, the workers' compensation law provides

that an employer who has paid compensation for an injury may recover that compensation payment, together with certain costs, fees and special damages, from a negligent third party in a civil action. (Lab. Code, §§ 3852, 3856.) If, as the majority seems to suggest, even a negligent hirer bears no civil responsibility for injuries to a contractor's employees, the contractor, even if faultless, will be unable to recover its costs of compensation from the negligent hirer. "The judicial abolition of all hirer liability, based on *Privette*, would leave the injured party's employer, who has paid workers' compensation benefits, without recourse against the hirer whose negligence might have caused or contributed to the worker's injuries . . . ." (*Grahn* v. *Tosco, supra*, 58 Cal.App.4th at p. 1387.)

Finally, the hirer held liable under section 413 is not without remedy when a substantial degree of fault lies with the contractor. Like any other third party held partly at fault for an employee's on-the-job injury, the hirer is entitled to (1) a reduction in the judgment "by an amount attributable to the employer's [contractor's] proportionate share of fault, up to the amount of workers' compensation benefits paid" (*DaFonte* v. *Up-Right, Inc., supra*, 2 Cal.4th at p. 599), and (2) limitation of the judgment for noneconomic damages, pursuant to Civil Code section 1431.2, to the amount proportionate to the third party's (hirer's) own share of fault (*DaFonte* v. *Up-Right, Inc., supra*, at p. 604). Cases presumably exist in which this formula leaves the third party responsible for more than its fault-proportionate share of economic damages. Any unfairness in that result, however, is an unfairness the law imposes on *all* third parties who negligently contribute to on-the-job injuries, not only on hirers of independent contractors.

The holding I urge, that *Privette* does not bar liability on the part of a person who hires a contractor to perform inherently dangerous work, but fails to direct that precautions be taken against dangers specially known to or within the control of the hirer, would not nullify the effect of *Privette* or allow injured workers to routinely circumvent that decision. To be sure, some "pleading around" *Privette* might be expected, but the only way to prevent all such artful pleading would be to hold, as an absolute rule, that the hirer is never liable, on any theory, for injuries to the contractor's workers, a rule even the majority does not explicitly embrace. Indeed, the majority's concession that *Privette* does not bar liability for failure to disclose concealed dangers (maj. opn., *ante*, at p. 269, fn. 4) will itself provide ample shelter for the artful pleader. But pleading and proving are two different things. The circumstances in which I would allow liability are narrow, and, in a routine case of contractor negligence or pure accident, a cause of action against the hirer would not survive summary proceedings.

The distinction between liability imposed vicariously and that based on personal negligence, moreover, is one that can be coherently and predictably

applied to determine what theories of liability are and are not barred by *Privette*. A recent Court of Appeal decision illustrates this approach. (*Grahn v. Tosco Corp., supra*, 58 Cal.App.4th 1373.) After concluding that *Privette* was intended to preclude worker suits only for causes of action "based on principles of vicarious liability" (*id.* at p. 1389), the court examined each of the liability theories submitted to the jury in that case and determined that, while *Privette* does not bar theories of liability for negligent hiring of a contractor (§ 411) or negligent exercise of retained control (§ 414), it does bar liability for a dangerous condition on the land (§ 343) where the dangerous condition is created by or was the subject of the contractor's work. (*Grahn v. Tosco Corp., supra*, at pp. 1389-1401.) In contrast, the majority opinion in this case leaves the bench with no meaningful guidance as to how *Privette* affects common theories of hirer liability other than those falling within the rubric of peculiar risk. Continued conflict at the appellate level will be the sure result, with the consequence of more uncertainty and error in the trial courts.

My criticism in this respect is not directed at the majority's conclusion that we do not have before us the question of liability for negligent exercise of retained control (§ 414), a conclusion with which I agree, but, rather, at the majority's failure to articulate for the present decision a coherent rationale that will guide future courts in deciding related questions as to the construction of *Privette*.

At places, the majority relies simply on its view (which I believe incorrect) that all "peculiar risk" liability is "derivative" or "vicarious," perhaps suggesting *Privette* does not bar some other theories of hirer liability to a contractor's workers. (E.g., maj. opn., *ante*, at p. 265 [alluding to "traditional theor[ies] of direct liability," which presumably are not barred by *Privette*].) At other points, however, the majority appears to rely on a broader rationale, one that logically would preclude other recognized theories of hirer liability, such as negligent exercise of retained control.

For example, the majority observes that sections 413 and 416 are both stated as exceptions to a general rule of nonliability for a contractor's acts or omissions, embodied in section 409. (Maj. opn., *ante*, at p. 265.) True enough, but so, of course, is section 414, which recognizes the retained control theory of liability. Similarly, at page 266, *ante*, the majority relies on the argument made in a tentative draft of the Restatement (but not adopted in comments to the final version) that a hirer's liability to "others" or "another," as those words are used in the Restatement, should not extend to employees of the contractor, because injuries to those employees are covered by workers' compensation, the costs of which are passed on to hirers. That

reasoning, of course, suggests that *all* theories of hirer liability to the contractor's employees should be barred, including that embodied in section 414, which states that a hirer may be liable to "others" for negligent exercise of retained control. Yet the majority opinion (*ante*, p. 269, fn. 4) then disavows an interpretation of *Privette* as barring all hirer liability. The majority opinion, in short, adds regrettable confusion to an already muddled area of the law.

### III

The summary judgment record reveals plaintiff Timothy Toland, an employee of the framing subcontractor CLP Construction, Inc. (CLP) was injured while attempting, with several other CLP workers, to raise a framed wall to the vertical position. At the CLP foreman's direction, the crew tried to "walk" the wall up from underneath; after a certain point they were unable to raise it further and, for reasons not clear from the evidence, it suddenly fell, with Toland trapped beneath it. There was evidence the wall's design and the wet winter weather made the frame relatively heavy and that the wind was gusting strongly at or around the time the crew tried to raise it. Plaintiff's expert declared that "[i]ndustry custom of good safe practice dictates that tall walls and or heavy walls (such as the wall in question) be raised or stood by mechanical means as opposed to manual (man power) methods." On the next working day after the accident in which Toland was injured, CLP used a boom truck to raise the wall.

I would hold the record failed to present a triable issue, under the *Nelson* analysis, as to liability of the general contractor and developer, Sunland Housing Group, Inc. (Sunland), for injuries resulting from a peculiar risk. Nothing in this record suggests Sunland was in a better position to assess the weight of the frame, the weather conditions, or the strength and number of the workers available to raise the wall. To the contrary, CLP, knowing its own workers, having actually built the wall to be lifted, and being able to assess the weather conditions from moment to moment, was better positioned than Sunland to evaluate the danger of lifting the wall without mechanical assistance. CLP was, in addition, better positioned to train and direct its own workers in execution of the chosen method. If, as plaintiff's expert opined, the customary and safe practice is to use a mechanical device to raise such a wall, no facts in the record suggest the general contractor would have better reason to know of such practice or be better positioned to implement it than the framing contractor. In short, in this case as in *Nelson, supra*, 639 F.2d at page 478, there is no evidence "that the [hirer] was in a better position than the contractor either to anticipate dangers to workmen, to foresee and evaluate the best methods of protection, or to implement and

enforce compliance with appropriate on-site safety precautions." The record, rather, supports the contrary inference, that CLP was in the best position to avoid risks arising from its own work. Sunland should therefore not be liable for injuries resulting from CLP's negligent choice of a particular work method or its performance thereof.

For this reason, I concur in the result.

Mosk, J., concurred.